MILLARD, C.J., and BLAKE, J., dissent.
George A. Colman died testate in the city of Seattle on January 10, 1933, being then of the age of seventy-one years. His will was duly admitted to probate, an inventory was filed, and an appraisal of the assets of the estate was duly made.
Thereafter, William H. Pemberton, as supervisor of the inheritance tax and escheat division of the state government, filed in the cause what is denominated as "Exceptions to Appraisement and Petition for Order Adjudicating Amount of Inheritance Tax." By this pleading, specific objections were made to the valuation placed upon certain common stock belonging to the estate and charges were made to the effect that the inheritance tax report filed by the executor showed, *Page 314 
(a) too great deduction for executors' fees, (b) a deduction for Federal estate tax paid under the 1932 act, (c) that certain property passing under the will had not been inventoried or appraised, and (d) that, previous to his death, the decedent had transferred certain properties in contemplation of death, or intended to take effect after his death, (1) to a charity trust, the gift being of the value of $257,556.30 distributable to an institution or institutions without the state, and (2) a gift of the value of $643,890.75 to Kenneth B. Colman, a nephew, in trust for the benefit of himself and others.
The answer to the petition consists of appropriate admissions and denials, together with certain affirmative allegations not now requiring special mention. The issues thus represented were tried to the court, resulting in an order and decree which is adverse to the four principal and important claims set forth in the petition.
The supervisor has appealed, and by his assignments of error he attacks so much of the decree as exempts from the inheritance tax the gift to Kenneth B. Colman, or to the so-called family trust and the gift to the charity trust. The authorized deduction of twenty thousand dollars as executor's fees and the deduction of the amount paid as Federal estate tax are both likewise questioned.
Whether or not the gifts referred to are taxable, is, to a considerable extent, a question of fact. Therefore, a brief, but, so far as possible, comprehensive, statement of the established facts must be attempted.
The deceased was born December 10, 1861, and was therefore two months past sixty-eight years of age at the time the first gift was made. He was a bachelor, very much devoted to his immediate family, which consisted of his mother, who survives him, his brother Laurence, his nephew Kenneth, and his niece Isabel. *Page 315 
Mr. Colman was a man of large means, but apparently of simple tastes and habits. His life was devoted to his duties as an officer and stockholder in the J.M. Colman Company, a family corporation, and his wealth apparently arose from the interest in that business which he inherited from his father, plus the increase due to the industry and ability of himself and his brother.
The nephew, Kenneth Colman, was the only young man in the family, and he became connected with the family corporation as an employee immediately after leaving college, working in close association with his uncle, the decedent. On two previous occasions, Mr. Colman had given to Kenneth five shares of stock and a similar amount to his niece Isabel.
On February 10, 1930, just two months after he became sixty-eight years of age, Mr. Colman called his nephew Kenneth into his office and presented him with one hundred fifteen shares of the capital stock of the J.M. Colman Company, saying to the young man, in effect, that he had been with the company quite a while, was now acquainted with its business and with its aims and standards, and had learned to make proper use of money so that, as invested capital, it might be of value, not only to the owner, but to those to whom it might furnish employment and to the community in which the industry was located. He then said:
"I am transferring 115 more of my shares to you, which makes you holding 125, and gives you a real interest in the company; and I believe a man always works better for a thing he has an interest in or part ownership in. And I think you are able to carry out the same purposes that your father and I have carried out. . . . You have been here some time, and you will be taking more responsibility as time goes on. Now you will have a real part in it, and you will show more interest in it." *Page 316 
He also indicated that, being a bachelor, he had less exemption from the Federal income tax, and that the nephew, a married man, would be more fortunate in that respect. At that time, a certificate for this stock was made out and delivered to Kenneth, and it remained in his possession and standing in his name upon the books of the corporation until the September following. At the time the gift was made in February, no conditions were imposed and no mention was made of any trust. There is no ground for holding that the gift was not an outright and absolute one at the time when made.
Later on, a suggestion came from outside the family that, if the stock were placed in trust for the benefit of Kenneth for life and then to his children and other beneficiaries, such an arrangement would decrease the inheritance taxes at the time of the death of Kenneth. Acting upon this plan, a declaration of trust was prepared and executed on September 16, 1930, by George A. Colman, as donor, and Kenneth Colman, as trustee. Kenneth then endorsed and surrendered the certificate for the 115 shares which his uncle had previously given him, and a new certificate therefor was issued to him as trustee.
The instrument recited that, on or about February 10, 1930, the stock had been transferred in contemplation of the trust agreement. This recital appears to be untrue in fact and probably was placed in the instrument by the scrivener without a full understanding of the facts. If a trust was thus established, it drew its existence not from any act of George Colman, but wholly from the acts of Kenneth.
At the same time and on September 16, 1930, Laurence J. Colman, the decedent's brother and business associate, created what is known as the Colman charity fund by executing a declaration of trust, as donor, *Page 317 
to himself, his brother George, and his son Kenneth, as trustees. The instrument provided that other members of the immediate family might thereafter make gifts to the charity fund. At the time this instrument was executed, the donor Laurence transferred one share of his stock of the J.M. Colman Company to the trust and the mother of George and Laurence transferred forty-six shares of her stock to the trust.
Thereafter, on January 27, 1931, George Colman transferred to the charity fund, from his holdings, forty-six shares of stock of the J.M. Colman Company, leaving him the owner of sixty-nine shares of capital stock of that company, which he continued to hold until the time of his death. A few months later, the deceased executed his last will, by the terms of which he left all of his property to his mother.
Thus, it will be seen that the gift to Kenneth Colman was not made within two years prior to the decedent's death, but that the so-called family trust was established and the contribution by him to the charity fund both occurred within two years prior to the decedent's death; and, under the terms of Rem. Rev. Stat., § 11201-a [P.C. § 7051-1], whatever passed by reason of the trust instruments would be presumed to be gifts made in contemplation of death.
[1] The physical condition of the decedent and whether or not he actually expected an early death was a subject given a great deal of attention in the trial below, and we think undue stress is laid upon that subject here. All men contemplate death, because all men know they are mortal; and whether they think of death as being in the remote future or as likely to occur in the early future, does not ordinarily make much difference in determining whether, in fact, a gift is made in contemplation of death.
So far as we deem it necessary to discuss that question, *Page 318 
we may say that the decedent had suffered from failing eyesight for some years preceding the making of the gifts. He seemed worried, we think, more by fear that he could not continue his business activities and perform his customary duties with the family corporation because of failing eyesight rather than by any fear of death. After consulting many doctors regarding his eyesight, he was probably advised that he might have, perhaps did have, a pituitary tumor, which was affecting the optic nerve. The weight of the testimony indicates that such a tumor is not a threat to life; but, whether so or not, it seems apparent that Mr. Colman had no reason to suppose that the tumor, if it existed, threatened anything more than loss of eyesight. At any rate, it seems clear that, at the time the gift was made to the nephew Kenneth, no one had suggested to Mr. Colman the existence of a tumor as anything more than a remote possibility.
There were other things in Mr. Colman's physical condition indicating the approach of old age, but nothing which interfered with his daily activities to any appreciable extent; and, so far as we can gather from the record, he was advised of nothing which would be at all alarming. We are therefore forced to draw the conclusion that, on February 10, 1930, the gift was made to the nephew, not in contemplation of death, not to take effect after the death of the donor, but for the very clear purpose of interesting the nephew more deeply in the family business for his own good and for the good of the business, encouraging him to devote himself to that business and to increase his income in proportion as his responsibilities were increased. The uncle enjoyed a large income and the nephew but a small one. If the donor then entertained the idea that, by the division of his stock and of his income, less of the earnings of the family corporation would be consumed *Page 319 
in paying taxes, that was a legitimate idea, which the law does not condemn.
The trial court found, and we find, that the gift to Kenneth was made on February 10, 1930. There is, therefore, no statutory presumption that the gift was made in contemplation of death; and there being no presumption to overcome, we are abundantly satisfied that the gift was made for very natural and obvious reasons in contemplation of life, and in order that the donor might see and enjoy that devotion of the nephew to the family interests which would naturally be inspired by the gift.
What we have said is wholly in harmony with our previous decisions upon this subject. In re Carvill's Estate, 181 Wn. 627,44 P.2d 768; In re Culver's Estate, 185 Wn. 54,53 P.2d 302, and In re Brookes' Estate, 185 Wn. 294,52 P.2d 307.
We said in the Carvill case, supra, and repeated in theCulver case, supra, "The contemplation of death must be the impelling motive, without which the conveyance could not be made;" and in the Brookes case, supra, quoting from the Federal supreme court, we said: "The words `in contemplation of death' mean that the thought of death is the impelling cause of the transfer." We are clear that the thought of death was not the impelling cause of the gift to the nephew Kenneth.
[2] The gift to the charity fund presents quite another question: First, because it was made within two years preceding the decedent's death and is therefore subject to the statutory presumption; and second, the impersonal nature of the gift radically changes the situation.
As already indicated, the charity fund was established by Laurence Colman as donor, he then donating a single share of the Colman Company stock; the *Page 320 
mother donated forty-six shares, and later, and within two years preceding his death, George Colman donated forty-six shares of the same stock. The declaration of trust provides for the payment of costs and expenses out of the income, the remainder of the income to be distributed to any one or more of some thirty-six charitable organizations named (many of which are non-residents of the state),
"or any other charities acceptable to the Federal Government, contributions to which are deductible for income and estate tax purposes. The distribution of the income from this Trust shall be made to such charitable organizations and agencies by said Trustees in such amounts and proportions and at such times, but at least annually, as may be agreed upon by a majority of said Trustees, and the decision of the Trustees regarding the selection, amounts to each organization and the time of payment, shall be final and conclusive."
The declaration of trust provided for its amendment by Laurence Colman, the donor:
"Donor reserves full right, power and authority to modify, change or amend the terms hereof, which power shall be exercised by making an agreement supplemental to this one, at any time during Donor's life, provided, however, that such amendment or supplement is for the benefit of this Trust Estate."
No amendment had been made at the time of the death of George Colman, nor was any attempt made to amend the declaration until February 15, 1935, or more than two years after the decedent's death.
This phase of the case presents two questions: First, Was the charitable gift made in contemplation of death? A gift of some part of the donor's income to a specific charity may perhaps involve somewhat the same motives as a gift to a near relative made to relieve hardship or to advance his material welfare. To a lesser extent, a gift of income for more general charitable *Page 321 
purposes may partake, in some degree, of the same nature, but a gift of a substantial amount from the principal of the donor's estate, of such a general nature as was here made, by a person who knows he is near the end of his useful and gainful career, the benefits of which go to institutions in which he has not theretofore evidenced any special interest, indicates in and of itself a testamentary intention. This situation, aided by the statutory presumption, convincingly establishes that the charitable gift here involved was made in contemplation of death.
[3] The second question is as to the time when the inheritance tax, measured by the gift of charity, becomes effective. The gift to charity when made and at the time of the death of the donor was not limited for use within the state of Washington so as to entitle it to exemption from the inheritance tax under Rem. Rev. Stat., § 11218 [P.C. § 7052], and we think anything done in the way of amendment to the declaration of trust made after the death of the decedent cannot affect the situation. Rem. Rev. Stat., § 11201 [P.C. § 7051], makes the inheritance tax a lien on the estate from the death of the decedent until paid, and the tenor and effect of the law throughout is to make the date of death the determinative time upon this question. See Inre Foss' Estate, 114 Wn. 681, 196 P. 10.
Though the declaration of trust may be amendable by Laurence Colman, therein named as donor, such amendment can have no retroactive effect, and where the right of the state has once vested and its vested claim has become a lien upon all of the property of the estate, no such amendment can divest the state of its vested right and lien. The trial court erred in holding that the gift to the charity fund was not subject to the inheritance tax. *Page 322 
 [4] Little need be said regarding the allowance of twenty thousand dollars as executor's fees. The amount seems large, but the estate is a large one, and the extent of the labor and responsibility cast upon the executor was better known to the trial court than it is to us. In such matters, a rather large measure of discretion is lodged in the trial court. A study of the record reveals nothing which will warrant a holding that there was here an abuse of discretion.
[5] We come now to the final and, perhaps, the most difficult question in the case, which is the deductibility of the Federal estate tax.
It is the appellant's contention that Rem. Rev. Stat., § 11201-b [P.C. § 7051-2], was repealed or amended by necessary implication by the enactment of chapter 180, Laws of 1935, p. 706. To the contrary, the respondent maintains that the section referred to remains in full force and effect, wholly unaffected by the act of 1935.
Originally, the statute made no provision for such a deduction. In re Sherwood's Estate, 122 Wn. 648,211 P. 734. Following that decision and by § 1 of chapter 134, Laws of 1931, p. 401, § 11201 was amended:
". . . by adding thereto a new section to be known as section 11201-B to read as follows:
"Section 11201-B. In all estates the amount of the federal estate tax, as paid by the estate, shall be deducted as a claim or indebtedness against the estate."
By § 104, chapter 180, Laws of 1935, p. 768 (Rem. 1935 Sup., § 11201 [P.C. § 7030-164]), the legislature undertook to amend chapter 55 of the Laws of 1901, p. 67 (the original inheritance tax law appearing as Rem. Rev. Stat., § 11201), as amended "to read as follows" and then set forth what, for present purposes, may be said to be the original section, continuing it in force as the amended section, including the use of the *Page 323 
original words "and no other sum" following specified deductions, omitting all reference to the Federal estate tax and making no mention of the new section known as § 11201-b, which was created by the act of 1931.
Section 125 of the 1935 act, p. 791, repeals certain specified sections of definitely described former acts, none of which are here in question, and adds "all acts and parts of acts in conflict with the provisions of this title are hereby expressly repealed."
So that, if § 11201-b was amended or repealed by the act of 1935, it was by implication only.
Since, by the terms of the 1931 act, a new section was created to stand as such with a definite number of its own, separate and apart from § 11201, and since no mention was made of such new section in the 1935 act, we must, if we logically can, hold that the legislature had no intention of affecting § 11201-b in any way by the subsequent act which failed to mention it. Had there been such an intention, the easy means and the obvious necessity would have led to a direct and simple statement of the intended repeal or amendment.
Moreover, since our inheritance tax is a tax on the right of succession, as we have uniformly held, a tax computed upon that which does not pass to the heirs or the devisees is illogical and out of harmony with the spirit of the law. The legislature, having recognized the logical necessity for such a deduction by the act of 1931, ought not to be and cannot be convicted of disregarding the laws of logic unless and until, by its express language, it forces such a result.
The use of the words "and no other sum" in the act of 1935 does not give to those words any life or meaning which they did not theretofore possess. Section 11201-b had obliterated those words, so far as the Federal estate tax is concerned, and there being no reference, direct or indirect, to that section in the 1935 act, *Page 324 
we are compelled to hold that it was not the intention of the legislature to destroy it.
Repeals by implication are not favored, and since such an amendment as is here contended for would, in fact, be a repeal, the supposed amendment is placed under the same handicap.Batchelor v. Palmer, 129 Wn. 150, 224 P. 685.
Section 11201-b measures the deduction by the amount paid, and therefore the whole amount so paid must be deductible.
We conclude that the judgment appealed from is right and must stand affirmed in all respects, except only as it holds the gift to the charity fund to be deductible. In that respect only, the judgment is reversed, with directions to deny the deduction.
MAIN, MITCHELL, HOLCOMB, BEALS, STEINERT, and GERAGHTY, JJ., concur.