[No. 26548.   Department Two.   July 26, 1937.]

*In the Matter of the Estate of* CHARLES CASE, *Deceased.*

W. J. TAYLOR, *as Executor, Respondent,* v. WILLIAM H. PEMBERTON, *as Supervisor of the State Inheritance Tax and Escheat Division, Appellant.*[1]

[1]Reported in 70 P. (2d) 806.

*William H. Pemberton* and *Charles Snyder,* for appellant.

*Paul F. Schiffner,* for respondent.

BEALS, J.—This appeal involves a claim of the state of Washington for an inheritance tax.

Charles Case, a bachelor seventy-four years of age, died December 7, 1935, in Spokane county, of which he had been a resident for many years. Mr. Case lived alone and very modestly in his own home. He could not read, and could write nothing except his name, but for all that was a keen trader and had achieved a considerable measure of success. For some time prior to his death, he relied on a friend, Mr. W. J. Taylor, for advice concerning his business affairs and assistance in his correspondence. Mr. Case was possessed of some property, and his income exceeded his expenditures. The record indicates that he enjoyed physical health and mental activity to a degree rather unusual for one of his age. He traveled often and extensively, and on several occasions visited a niece, Mrs. Margaret Chessel, of whom he was very fond, at her home in Rockford, Illinois.

November 3, 1935, Mr. Case suffered a heart attack, and shortly thereafter called his physician, who, on examination, found that Mr. Case was suffering from "heart-block." It appears that such a condition is incurable, but one so afflicted may live for several years. Some complications set in, and Mr. Case died December 7, 1935, as the result of an acute heart attack.

Mr. Case left a will, which was admitted to probate, the administration proceeding in an orderly manner. It appeared that, November 6, 1934, exactly thirteen months prior to his death, Mr. Case gave to his niece, Margaret Chessel, and her husband, Leo A. Chessel,

8

$6,700 in cash, with which to buy themselves a farm. At the same time, the following agreement was executed by Messrs. Case and Chessel:

"AGREEMENT dated this 10th day of November, 1934, at Rockford, Illinois, between Charles Case of Rockford, Washington and Leo A. Chessel of the town of Rockford, Illinois.

"The said Leo A. Chessel hereby agrees to pay the said Charles Case One Hundred Thirty Four ($134) per year beginning January 1st, 1935, with the first payment to be made January 1st, 1936.

"It is further agreed by both parties signed hereto that these payments shall be made only during the natural life of the said Charles Case and upon the death of the said Charles Case this agreement is null and void and no further payments made.

"CHARLES CASE<br>
"LEO A. CHESSEL"

The agreement was regularly acknowledged before a notary public.

The money sent by Mr. Case constituted the consideration for a deed whereby Thure W. Salgren and wife conveyed and warranted to Leo A. and Margaret Chessel, "as joint tenants and not as tenants in common," a tract of farm land in Winnebago county, Illinois. The deed was in form absolute, and it does not appear that any agreement between Mr. Case and the Chessels was made, save that above quoted.

The supervisor of the inheritance tax and escheat division filed in the probate proceedings his findings, claiming on behalf of the state of Washington a certain sum by way of an inheritance tax in addition to inheritance taxes previously paid. The executor filed objections to the claim, and a hearing was had thereon. All matters had been adjusted, save that the supervisor claimed that the gift to the Chessels was subject to taxation.

The trial court held that the gift was neither made in contemplation of death nor to take effect in possession or enjoyment after death, and that no tax was due the state of Washington in connection with such gift. The court entered findings of fact and conclusions of law, and from a judgment entered pursuant thereto and denying the state's claim for a tax upon the gift in question, the supervisor has appealed.

The trial court found that the deceased gave the Chessels $6,700 with which to purchase a farm; that the Chessels did purchase the farm, received the deed above referred to, filed the same for record, and December 15, 1934, took possession of the farm, "and ever since said date have had uninterrupted and uncontrolled possession of the same;" that the deed was absolute and contained no conditions, encumbrances or reservations in favor of the donor, Charles Case, or anyone else; that the parties entered into the written agreement above set forth, which agreement was entirely separate from and independent of the actual transfer of the money to the Chessels or the subsequent purchase of the farm property or any income arising from either; that the Chessels had become vested with absolute ownership and control over the money and over the farm from the time the latter was purchased; that, at the time the money was given to the Chessels and the farm purchased, and up to the date of his last illness, Mr. Case was in excellent health and in full possession of his faculties, actively alert both mentally and physically; that he never at any time intimated that he contemplated death, nor was he depressed or worried concerning the condition of his health, save that November 13, 1935, when he was stricken with the ailment which eventually caused his death, "he felt that was the breaking point of his good health;" that the gift was made with the inten-

tion that it should take effect in possession and enjoyment forthwith, and was not made by the donor in contemplation of death, nor was the same made or intended to take effect in possession or in enjoyment after the death of the donor.

■ Appellant argues that, as the $6,700 which Mr. Case owned, if placed in a savings bank or safely invested, would produce little more than two per cent per annum, and as the Chessels agreed to pay him annually an amount equal to that percentage on the money, and in view of the other facts as disclosed by the record, the state is entitled to an inheritance tax on the $6,700 under the following sections of Rem. Rev. Stat.:

"§ 11201. All property within the jurisdiction of this state, . . . which shall pass . . . by deed, grant, sale or gift made in contemplation of the death of the grantor or donor, . . . shall, for the use of the state, be subject to a tax. . . . "

"§ 11201-a. Any transfer of property made by a decedent by deed, grant, sale or gift within two years prior to said decedent's death, without a valid and adequate consideration therefor, shall be presumed to have been made in contemplation of death."

Appellant contends that the gift was made without any valid or adequate consideration exactly thirteen months prior to the donor's death, and strongly relies upon the presumption established by the section last above quoted.

Appellant relies upon many authorities, including several from this state, some of which we shall now consider.

*In re Carvill's Estate,* 181 Wash. 627, 44 P. (2d) 768, it was held that gifts to charitable institutions by a wealthy man, ninety-two years old, in consideration of substantial annuities, had, under the facts shown, been made in contemplation of death and were subject

to taxation. That the donor acted in contemplation of death, sufficiently appeared from the evidence.

In re Culver's Estate, 185 Wash. 54, 53 P. (2d) 302, it was held that a trust established by a husband and wife for their benefit and that of their three children was not subject to taxation. In the course of the opinion, it was observed that, as no Federal question was involved, this court was not bound by a recent decision of the supreme court of the United States, and that decisions of courts of other states, while proper to be considered, should be followed only in so far as this court deemed them correct and applicable to the laws of this state. We quoted with approval from the opinion In re Carvill's Estate, supra, the following definition of the statutory phrase "made in contemplation of death:"

" ' . . . an apprehension of death arising from some existing bodily condition or impending peril and not the general expectation of eventual decease commonly entertained by all persons. The contemplation of death must be the impelling motive, without which the conveyance could not be made, in order to subject the transfer of property to the inheritance tax.' "

Appellant also argues that, even though this court should be of the opinion that the gift to the Chessels was not made in contemplation of death, it should be held that the transfer was intended to take effect in possession or enjoyment at or after the death of the donor, and therefore subject to taxation. Appellant is correct in arguing that the delivery of the money to the Chessels, the purchase of the land, and the execution of the agreement by Messrs. Case and Chessel, should be considered together for the purpose of determining whether or not the facts support appellant's contention.

That the $134 a year which Mr. Chessel agreed to pay Mr. Case amounts to two per cent per annum on

the $6,700 which Mr. Case had given to the Chessels, has no particular significance. Any sum, up to the amount of the gift, which the Chessels might have agreed to pay, would have amounted to some percentage on the principal of the gift. The amount agreed upon is not referred to as interest on any other amount, and, so far as disclosed by the record, there was no secret or other agreement whatsoever, oral or written, entered into between the parties. Apparently, the money given to the Chessels became their money immediately it came into their possession, and the farm which they purchased became their farm, subject to their complete control.

Appellant relies upon the opinion of this court *In re Gaudette's Estate,* 165 Wash. 412, 5 P. (2d) 503, in which it was held that the state was entitled to an inheritance tax upon a transfer of property pursuant to an agreement which this court held was intended to take effect after the death of the grantor. In the case cited, the facts clearly indicated that the transfer was to become effective at or after the date of the death of the transferor, and the transaction was clearly subject to taxation.

*In re Ellis' Estate,* 169 Wash. 581, 14 P. (2d) 37, 86 A. L. R. 734, also relied upon by appellant, it was held that certain transactions were not gifts *inter vivos* and were subject to the payment of inheritance taxes. Two trusts were involved. In one, the grantor reserved a life interest, in so far as the income arising from certain securities was concerned, while in the other she was to receive a life income up to five per cent of the trust property. The trusts were to terminate and the properties thereof to be finally turned over to the beneficiaries, upon the death of the grantor. While it was recognized that the questions were of considerable difficulty, it was held that the property did not pass as

gifts *inter vivos,* and that the property embraced within the trusts vested in the beneficiaries thereof only upon the death of the grantor. A mere statement of the facts discloses vast differences between the questions considered by this court in the case last cited and those presented in the case at bar, in which it appears that complete possession and control of the property donated passed to the donees at the time the transaction was completed.

Appellant also relies upon the opinion of this court *In re Button's Estate,* 190 Wash. 333, 67 P. (2d) 876. It appeared that Carrie C. Button, then eighty-four years of age, removed from her home in Illinois to Seattle, where she established her residence with her niece, Helen McKinstry. In 1928, Mrs. Button transferred her entire property, some seventy thousand dollars, to Seattle, and shortly thereafter executed an agreement whereby a Seattle bank should hold the property in trust, the income and so much of the principal as was necessary for her use to be paid to her, any balance remaining at her death to be divided between her niece and nephews. Mrs. Button reserved the power to alter or revoke the trust. In the fall of 1931, Mrs. Button executed a written modification of the trust, making her niece the sole beneficiary, and in September, 1932, Mrs. Button revoked the trust and on the same day executed a conveyance of all her property to Mrs. McKinstry. In November, 1932, Mrs. Button executed her will, reciting that she had already given all of her property to Mrs. McKinstry, and that, if at her death she possessed any other property, that also should go to her niece. Mrs. Button died December 21, 1933, fifteen months after making the gift, being at the time of her death ninety-one years of age.

The trial court found that the gift was taxable as having been made without consideration and in con-

templation of death. After careful consideration, this court held that the trial court had correctly determined this point, it being noted as significant that Mrs. Button had disposed of everything she possessed, rendering herself thereafter entirely dependent on her niece. The case was correctly decided, but the facts differ so greatly from those disclosed by the record now before us that the opinion is not controlling here.

Appellant cites many cases from other jurisdictions, but we are of the opinion that the case at bar is governed by our own decisions.

In the recent case of *In re Colman's Estate,* 187 Wash. 312, 60 P. (2d) 113, this court, further considering the phrase "contemplation of death," used the following language:

"We said in the *Carvill* case, *supra,* and repeated in the *Culver* case, *supra,* 'The contemplation of death must be the impelling motive, without which the conveyance could not be made;' and in the *Brookes* case, *supra* [185 Wash. 294, 52 P. (2d) 307], quoting from the Federal supreme court, we said: 'The words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer.' "

Considering the particular facts then before it, the court, in the case last cited, said:

"The physical condition of the decedent and whether or not he actually expected an early death was a subject given a great deal of attention in the trial below, and we think undue stress is laid upon the subject here. All men contemplate death, because all men know they are mortal; and whether they think of death as being in the remote future or as likely to occur in the early future, does not ordinarily make much difference in determining whether, in fact, a gift is made in contemplation of death."

It was held that a gift to a relative was not subject to taxation as made in contemplation of death.

■ It is undoubtedly the law that the statutory presumption that a transfer within a certain period prior to death was made in contemplation of death is entitled to considerable weight, but "cannot stand against ascertained and proven facts showing the contrary to be true" (*United States v. Wells,* 283 U. S. 102, 51 S. Ct. 446), and that whether or not a particular transaction was carried out in contemplation of death is a question of fact.

*In re Brookes' Estate,* 185 Wash. 294, 52 P. (2d) 307, it was contended that certain gifts made by an aged lady were subject to the payment of inheritance taxes. One gift was made simply to help the donees, who were in straitened circumstances. The other was undoubtedly made in consideration of valuable services rendered by the donee in caring for an invalid sister of the donor. While both gifts were made within two years prior to the donor's death, it was held that neither gift was made in contemplation of death, and that no tax was payable. The case last cited is very much in point, if not controlling, in the case at bar.

Appellant herein does not seriously attack the facts as found by the trial court. Appellant does, however, rely upon a portion of the testimony of the executor, which appellant argues shows that the deceased had said that the Chessels were to pay him two per cent interest on the amount of the gift during his lifetime.

This testimony is vague and inconclusive, and is wholly insufficient to establish that the money turned over by Mr. Case to his niece and her husband was to be repaid by them, or that any obligation was raised on their part to hold the property which they purchased with the money as trustees for Mr. Case, or otherwise than as their own absolute property. Mr. Case retained considerable property, and maintained his personal and financial independence. He spoke of

16

journeys which he expected to accomplish, and, as indicated by the evidence, expected to live for several years beyond the span of four score years. He always spoke of his niece with great affection, and talked of buying her a farm for some time before the purchase was made. He always manifested the greatest affection for her, and had a high regard for her husband.

The evidence clearly supports the findings, and the judgment entered pursuant thereto was correct, and is accordingly affirmed.

STEINERT, C. J., HOLCOMB, ROBINSON, and BLAKE, JJ., concur.