[No. 29848. Department Two. August 9, 1946.]

KENNETH B. COLMAN, *Appellant,* v. IDA B. COLMAN *et al.,*
*Respondents.*[1]

*McMicken, Rupp & Schweppe* and *Mary Ellen Krug,* for
appellant.

*Edward M. Hay* and *David O. Hamlin,* for respondent
Hamlin.

*Macbride & Matthews* and *Thomas J. Hanify,* for respond-
ent Peoples National Bank of Washington in Seattle.

BLAKE, J.—Plaintiff brought this action, praying for the
annulment of an instrument executed September 16, 1930,

[1]Reported in 171 P. (2d) 691.

by his uncle, George A. Colman, purporting to create a trust in 115 shares of the J. M. Colman Company. Plaintiff was designated as trustee, and, as such, he signed the instrument *"to evidence his acceptance of the Trusts herein expressed."* (Italics ours.)

The defendants are named as beneficiaries in the instrument purporting to create the trust. That it constituted merely an abortive attempt on the part of George A. Colman to create a trust, was effectually held by this court in *In re Colman's Estate,* 187 Wash. 312, 60 P. (2d) 113.

In that case, the state sought to subject the 115 shares of stock—the subject of the purported trust—to an inheritance tax as a part of the estate of George A. Colman. On the ground that George A. Colman had made a gift absolute of the shares to Kenneth B. Colman some time prior to the execution of the instrument purporting to create the trust, we denied the claim of the state that the shares were subject to an inheritance tax. We then said, p. 315:

"On February 10, 1930, just two months after he became sixty-eight years of age, Mr. Colman called his nephew Kenneth into his office and presented him with one hundred fifteen shares of the capital stock of the J. M. Colman Company, saying to the young man, in effect, that he had been with the company quite a while, was now acquainted with its business and with its aims and standards, and had learned to make proper use of money so that, as invested capital, it might be of value, not only to the owner, but to those to whom it might furnish employment and to the community in which the industry was located. He then said:

" 'I am transferring 115 more of my shares to you, which makes you holding 125, and gives you a real interest in the company; and I believe a man always works better for a thing he has an interest in or part ownership in. And I think you are able to carry out the same purposes that your father and I have carried out. . . . You have been here some time, and you will be taking more responsibility as time goes on. Now you will have a real part in it, and you will show more interest in it.'

"He also indicated that, being a bachelor, he had less exemption from the Federal income tax, and that the nephew, a married man, would be more fortunate in that respect. At that time a certificate for this stock was made

out and delivered to Kenneth, and it remained in his possession and standing in his name upon the books of the corporation until the September following. At the time the gift was made in February, no conditions were imposed and no mention was made of any trust. There is no ground for holding that the gift was not an outright and absolute one at the time when made.

"Later on, a suggestion came from outside the family that, if the stock were placed in trust for the benefit of Kenneth for life and then to his children and other beneficiaries, such an arrangement would decrease the inheritance taxes at the time of the death of Kenneth. Acting upon this plan, a declaration of trust was prepared and executed on September 16, 1930, by George A. Colman, as donor, and Kenneth Colman, as trustee. Kenneth then endorsed and surrendered the certificate for the 115 shares which his uncle had previously given him, and a new certificate therefor was issued to him as trustee.

"The instrument recited that, on or about February 10, 1930, the stock had been transferred in contemplation of the trust agreement. This recital appears to be untrue in fact and probably was placed in the instrument by the scrivener without a full understanding of the facts. If a trust was thus established, it drew its existence not from any act of George Colman, but wholly from the acts of Kenneth."

We applied in that decision an elementary principle stated in 1 Bogert, Trusts and Trustees, 194, § 44, as follows: "From a settlor who has no property interest obviously no property interest can pass to trustee or cestui." So, by the instrument, no interest in the shares passed from George Colman to Kenneth Colman as trustee. By the same token, no interest passed from George Colman to the defendants in this case, who were named in the instrument as beneficiaries.

The question presented in this action is whether Kenneth, by affixing his name to the instrument *"as Trustee, to evidence his acceptance of the Trusts herein expressed,"* created a trust in his own property in favor of defendants. The trial court held that he did and entered judgment, dismissing his action, from which he appeals.

In approaching the question presented—whether Kenneth, in affixing his name to the instrument *"as Trustee,*

*to evidence his acceptance of the Trusts herein expressed,"*
created a trust estate in the shares—two fundamental prin-
ciples must be kept in mind: (1) "An express trust, unlike
a constructive trust, is created only if the settlor properly
manifests an intention to create a trust." 1 Scott on Trusts
146, § 23; and (2) an abortive attempt to create a trust by a
particular method will not be construed to be a trust on a
different theory. 1 Bogert, Trusts and Trustees, 573, 574,
§ 202; *Milroy v. Lord,* 4 DeG. F. & J. (Ch. App.) 264; *Loring
v. Hildreth,* 170 Mass. 328, 49 N. E. 652, 40 L. R. A. 127, 64
Am. St. 301.

In the *Milroy* case, Lord Justice Turner stated the rule,
p. 274:

"The cases I think go further to this extent, that if the
settlement is intended to be effectuated by one of the modes
to which I have referred, the Court will not give effect to it
by applying another of those modes. If it is intended to take
effect by transfer, the Court will not hold the intended
transfer to operate as a declaration of trust, for then every
imperfect instrument would be made effectual by being
converted into a perfect trust."

And in the *Loring* case, the court said, p. 331:

"It is also contended by the defendants, that, although the
deed of trust was never delivered, still the execution and
recording of it by Mr. Loring amounted to a sufficient declar-
ation of trust. It is conceded that, under the late English
cases, there was no sufficient declaration of trust to be en-
forced against Mr. Loring, or persons deriving title from
him. *Milroy v. Lord,* 4 DeG. F. & J. 264. [Citing additional
authorities.] But it is contended that these decisions pro-
ceed upon too narrow a ground, and that, although the trust
deed of Mr. Loring shows no intention to make himself a
trustee, and although there was no valuable consideration,
yet that he intended to affect the property with a trust, and
that this intention ought to be carried out. *The answer to
this view is, that the deed shows no intention to create a
trust, except in the manner provided. If his intention could
not be carried out modo et forma, then, so far as appears
there was no intention."* (Italics ours.)

Illustrative application of the principle is set forth in the citation from 1 Bogert, Trusts and Trustees, 573, § 202, as follows:

"Thus, if the settlor never delivers a deed of transfer, and *so it is a nullity as an instrument of transfer, equity will not treat the undelivered instrument as a declaration of trust by the settlor. He did not intend to become a trustee. He intended to bring about a trust through a transfer to a third person or not at all.* The settlor had two intents—one to place the legal interest in the trustee and the other to vest the equitable interest in the cestui que trust. He has not performed sufficient acts to achieve either result. The proposed volunteer cestui que trust who claims that he would have received an equitable interest and the trust would have been created, if the settlor had proceeded by way of trust declaration, has no merit in his contention." (Italics ours.)

██ To hold that a trust was created by appellant, or that he had any intention of creating a trust, would do violence not only to these principles, but also to the fundamental rules applicable to the construction of contracts in general. To so hold would alter the instrument completely and read into it a meaning and consequence that cannot be discerned from its contents. The instrument is too long and involved to set forth—or even summarize—at length. But, as appears in the quotation from *In re Colman's Estate, supra,* it was executed by George A. Colman, as grantor, to appellant, as trustee.

The consideration recited is the "Love and Affection which the Grantor bears toward the beneficiaries herein named." Then follow in great detail provisions relating to the powers and duties of the trustee and the rights of the beneficiaries. Many, if not most, of the provisions relating to the powers and duties of the trustee would have been inapt and unnecessary had appellant been attempting to create a trust in himself of his own property for the benefit of respondents. The most that can be said is that, in signing the instrument *"as Trustee, to evidence his acceptance of the Trusts herein expressed,"* appellant acquiesced in his uncle's assumption of ownership of the shares of stock. To

our minds, this falls far short of a declaration of an irrevocable trust by appellant.

Nor do we think his subsequent attitude with respect to dividends received on the shares evidences anything more than a continued acquiescence in his uncle's assumption of ownership of the shares when the instrument was executed. Such attitude certainly did not establish an irrevocable trust in the shares for the benefit of the respondents.

It is our view that the instrument was absolutely void as a deed of trust, because the putative settlor had no interest in the property designed to be the corpus of the trust; consequently, no interest in the property passed to the trustee or the putative beneficiaries. 1 Bogert, Trusts and Trustees, 194, § 44.

Respondents contend the action is barred by the statute of limitations. To sustain the contention would give vitality to that which was void at its inception. The mere passage of time cannot give rise to a substantive right except by prescription. And, of course, there is no such element in this case, because the property was at all times in the possession of the appellant.

The judgment is reversed and the cause remanded, with direction to enter judgment quieting appellant's title to the shares of stock in controversy.

BEALS, C. J., MILLARD, ROBINSON, and JEFFERS, JJ., concur.