[No. 11380. Department Two. April 25, 1914.]

E. H. SPAULDING et al., Appellants, v. ADAMS COUNTY, Respondent.[1]

TAXATION—PERSONAL PROPERTY—SITUS—STATUTES. Under Rem. & Bal. Code, § 9236, providing for the assessment for taxation of any stock of goods brought into the state after March 1st, "to be sold in a place of business temporarily occupied for their sale," without intent to engage in permanent trade at such place, a shipment of buggies brought into the state for sale by sales agents traveling over the country, and deposited and stored in a warehouse, is assessable for taxation, where deliveries were made from the warehouse, although no orders were taken there; since a delivery is necessary to a completed sale.

SAME — STATUTES — CONSTRUCTION. Statutes for assessment of property for taxation are to be liberally construed, that property justly assessable shall not escape through technicalities.

SAME—EXEMPTIONS—ASSESSMENT ELSEWHERE. Property brought into the state after March 1st, and otherwise taxable, is not exempt because it had been assessed elsewhere for the same year.

SAME—PERSONAL PROPERTY— STATUTES— CONSTRUCTION—"IMMEDIATELY." A finding that a stock of goods brought into the state after March 1st, was assessed "immediately upon its arrival at R." does not necessarily mean upon the "instant" and while still in transit; but may mean "proximately" or "directly," and hence after it was unloaded and stored.

COMMERCE — INTERSTATE COMMERCE — INTERFERENCE — TAXATION. Where a stock of goods is brought into the state and stored in ad-

[1]Reported in 140 Pac. 367.

vance of ·sales, or where it reached its destination for final disposal although not taken from the cars, the taking and' filling of orders therefrom is local and not interstate commerce, and the imposition of taxes on the property is not an interference with interstate commerce.

Appeal from a judgment of the superior court for Adams county, Holcomb, J., entered January 10, 1913, upon findings in favor of the defendant, in an action to recover taxes paid under protest, tried to the court. Affirmed.

*John M. Cannon*, for appellants.

*W. O. Miller*, for respondent.

FULLERTON, J.—The appellants, The Spaulding Manufacturing Company, a copartnership, brought this action against Adams county, Washington, to recover the sum of $273.38, with interest, paid by them under protest to that county as taxes upon certain of their personal property. They failed to recover in the court below, and appeal from the judgment entered against them.

In the years 1909 and 1910, the appellants shipped from Grinnell, Iowa, to Ritzville in Adams county, four several carloads of buggies; the first arriving at that place on March 20, 1909, the second on April 10, 1909, the third on August 30, 1909, and the fourth on April 1, 1910. The buggies were shipped in a dismantled condition, and were unloaded from the cars in which they arrived and carried to a warehouse rented by the appellants, where they were reassembled and kept until sold. The buggies, on their arrival at Ritzville, were taken in charge by· an agent of the appellant, called a sales manager, who directed their disposition. This manager employed a number of sales agents, to each of whom he delivered from the stock two or more buggies, which the sales agents would drive through the country and solicit orders from prospective purchasers, using the buggies as samples. When an order was received for a buggy, a note was taken from the person giving the

order for an amount equal to the purchase price of the buggy ordered, which note was turned over to the sales manager for approval. If the sales manager approved the order, he would cause a buggy similar in kind to that selected from the samples to be delivered to the person executing the note. If the sale was not approved, the note was returned to the maker. This process was continued until the entire stock, including samples, was sold.

No sales were solicited, nor were buggies sold, at the warehouse, although deliveries were sometimes made thereat; the usual process, however, was to deliver the buggy at the home of the purchaser. In certain instances, buggies were sold by the sales agents and delivered to the purchasers from the samples, but the trial court found that no such sales had been made within the limits of the city of Ritzville. It further appeared that the appellants at no time intended to engage in permanent trade in Adams county, and did not engage in permanent trade therein, but quit trading there as soon as the last of the buggies were sold. It appeared, also, that the appellants had been assessed on the buggies, or on the materials which entered into their manufacture, by the authorities of Poweshiek county, Iowa, for the years current with the years in which they were assessed in Adams county as hereinafter stated, and had paid the taxes so levied thereon.

On the arrival of each carload of buggies at the city of Ritzville, the corporate authorities of Adams county caused them to be valued for assessment purposes, and caused a tax to be levied on such valuation at the rate current in the county for the particular year in which the buggies arrived. The aggregate of these several sums constitute the tax which this action is prosecuted to recover.

The statute under which the authorities of Adams county acted in making the several levies upon the property is found at Rem. & Bal. Code, § 9236 (P. C. 501 § 217), and reads as follows:

"Whenever any person, firm or corporation shall, subsequent to the first day of March of any year, bring or send into any county any stock of goods or merchandise to be sold or disposed of in a place of business temporarily occupied for their sale, without the intention of engaging in permanent trade in such place, the owner, consignee or person in charge of the said goods or merchandise shall immediately notify the county assessor, and thereupon the assessor shall at once proceed to value the said stock of goods and merchandise at its true value, and upon such valuation the said owner, consignee or person in charge shall pay to the collector of taxes a tax at the rate assessed for state, county and local purposes in the taxing district in the year then current. And it shall not be lawful to sell or dispose of any such goods or merchandise as aforesaid in such taxing district until the assessor shall have been so notified as aforesaid and the tax assessed thereon paid to the collector. Every person, firm or corporation bringing into any county of this state goods or merchandise after the first day of March shall be deemed subject to the provisions of this section."

The first contention on the part of the appellants is that their business as conducted by them was not of such a nature as to render their property taxable under the provisions of the statute. It is argued that the buggies were not sent into Adams county "to be sold or disposed of in a place of business temporarily occupied for their sale," and in fact were not so sold or disposed of; that the property was temporarily stored only, in a place in Adams county, and were sold and disposed of generally throughout the county at no particular place, and that no sales were made at the place of storage; that the statute applies only to cases where the vendor opens a store and sells goods to customers who come to the store to buy them, and not to sales made entirely elsewhere than at the storage place, and are only delivered to the purchaser from such place. It is argued further, also, that the last sentence of the section, namely, "Every person, firm or corporation bringing into any county of this state goods or merchandise after the first day of March shall be

deemed subject to the provisions of this section," should be read as if it were at the beginning, and not at the end, of the section, and construed as if it were a part of the first sentence thereof. With reference to the latter phase of the contention, we think it may be conceded that the sentence quoted does not, alone, authorize the assessment made upon the appellants' property, but that the right to assess such property must be found in the first sentence of the section; that it must be found that the appellants brought within the county of Adams a stock of goods or merchandise to be sold or disposed of in a place of business temporarily occupied for their sale, without the intention of engaging in permanent trade in such place, before the property can be deemed to be assessable under the statute.

But after so conceding, we have no difficulty in reaching the conclusion that the appellants' property is assessable. Clearly, the appellants brought within the county of Adams, after the first day of March, a stock of goods to be sold or disposed of in that county, without the intention of engaging in permanent trade in such county; and it is no more than a liberal construction of the statute to say, from the facts recited, that such goods were brought within the county to be sold and disposed of in a place of business temporarily occupied for their sale. True, orders for the goods were not taken at the place of actual deposit, but deliveries upon the orders were made at and from such place, and delivery is as necessary to a completed sale as is the entering into the contract of sale.

We are aware that the older rule was to construe the taxing statutes strictly. Tax titles were once proverbially worthless. This court has not, however, followed this rule. It is not necessary to set forth the decisions here, but a most cursory examination of the reports of our adjudicated cases will show that such statutes have been given a liberal interpretation, and that we have upheld the action of the taxing officers in all cases where the substance and spirit of the

statute has been pursued, even though there may have been a departure from its strict letter. We think now that this is the better policy. The government must exist. It cannot exist without taxation. Taxation, to be just, must be levied upon the property of all persons alike, and it is not levying taxes upon all property alike if the property of one person justly assessable is to escape by technical construction, and the increased burden caused thereby levied upon the property of another.

There is no hardship in the particular case. The appellants, residents of a foreign state, brought their property into this state to dispose of it to our citizens at a profit to themselves. The property, as soon as it arrived, was under the protection of the state. The contracts made with our citizens with reference to the sale of the property are enforcible under our laws. The machinery of our courts are open to the appellants to enforce such contracts, and it is used by them for such purpose. It is but just that, for this protection and for these privileges, the property should contribute to the support of the state.

It is suggested that the property is not taxable in this state because taxed in the state of Iowa for the year in which it was shipped into this state. But the rule is to the contrary. Property otherwise taxable in this state is not exempt because it has been taxed for the same years in another state. *Nathan v. Spokane County*, 35 Wash. 26, 76 Pac. 621, 102 Am. St. 885, 65 L. R. A. 336; 37 Cyc. 755. As was said in *Holton v. Bangor*, 23 Me. 264:

"If a person chooses to employ his visible and tangible personal property within a jurisdiction, where he has no domicile, thereby receiving, it may be, peculiar favor from its laws, and subjecting them to the charge of its protection, it may not be unjust or unreasonable, that it should be subjected to taxation within that jurisdiction, although it may in law be considered as following the person of the owner, and subject to taxation there also. The state must be the judge of its rights and duties in such cases; and the

persons may relieve themselves from the possibility of a double burden by a disposition of their property, or by a change of their domicile."

Lastly, it is urged that the goods were still in transit, or at least had not become of the mass of property within the county of Adams, at the time it was assessed, and that the assessment was therefore unlawful as an interference with or burden upon interstate commerce. On its facts, the case is before us on the findings of the trial court, no statement of facts having been sent up as a part of the record. These findings recite that the property was assessed by the assessor of Adams county, "immediately upon its arrival at Ritzville, in said Adams county;" and the appellants construe this to mean that it was assessed prior to the time the property was unloaded from the cars in which it was carried into this state; and the contention that the property was assessed while in transit, or before it had become of the mass of the property of the state, is based upon this construction of the findings. It has seemed to us, however, that the finding is capable of another construction. The word "immediately," does not necessarily mean "upon the instant," but may mean "proximately," or "directly," and is thus (in the instant case) just as applicable to an assessment made upon the property after it had been unloaded from the cars as it is to an assessment before that event. That the latter was the meaning of the trial judge is made clear from the written memorandum made by him when he decided the cause; for, in the memorandum, he expressly recites that the property was asssessed after it had been stored in the warehouse. This being true, there can be no question as to the status of the property when the assessment was levied. Where goods are brought into the state and stored in advance of sales, and orders taken for the property are filled therefrom, the business is not interstate, but local, commerce, and laws imposing taxes thereon are not invalid as interfering with interstate commerce. *Hynes v. Briggs*, 41 Fed. 468; *American Harrow*

*Co. v. Shaffer*, 68 Fed. 750; *Kehrer v. Stewart*, 117 Ga. 969, 44 S. E. 854; *American Steel & Wire Co. v. Speed*, 192 U. S. 500; *Brown v. Houston*, 114 U. S. 622; *Pittsburg & S. Coal Co. v. Bates*, 156 U. S. 577.

But we think the rule would not be different were the appellants' construction of the findings the correct construction. The property had reached its destination. It had come to its place of rest for final disposal and use, and was to remain there until finally disposed of by the owner. As such, we think it constituted a part of the mass of the general property of the county, even while on the cars, and was thus subject to taxation under the provision of the statute quoted, since it was the intention of the owners to take it to a place of business to be temporarily occupied for its sale.

We conclude, therefore, that the tax in question is legal and valid, and no cause for its recovery by the persons paying it exists. The judgment is affirmed.

CROW, C. J., PARKER, MORRIS, and MOUNT, JJ., concur.