[No. 24130.  *En Banc.*  June 9, 1933.]

NORTH SPOKANE IRRIGATION DISTRICT No. 8, *Appellant,*
v. SPOKANE COUNTY, *Respondent.*[1]

*F. A. McMaster,* for appellant.

*C. W. Greenough* and *A. O. Colburn,* for respondent.

STEINERT, J.—The owners of certain tracts of land lying within the irrigation district of the appellant allowed water assessments thereon to become delinquent. The lands were put up for sale by the county treasurer, under the procedure outlined in Rem. Rev. Stat., § 7444. There being no bidders therefor, the property was "struck off to the irrigation district as the purchaser," as provided in Rem. Rev. Stat., § 7445.

[1]Reported in 22 P. (2d) 990.

The latter section contains a provision to the effect that the irrigation district, as purchaser, shall have the same rights as a private person, and may assign or transfer the certificate, upon payment of the amount which would be due if redemption were being made by the owner.

Rem. Rev. Stat., § 7447, gives the owner of the land, or any person in his behalf, the right to redeem the property from sale within one year from date of purchase, by paying the amount of the purchase price and interest, together with the amount of all subsequent assessments paid by the purchaser and all assessments levied during the period of redemption. That section further provides that, if redemption be not so made within the one-year period, then the county treasurer shall *make* a deed of the property to the purchaser or his assignee. Rem. Rev. Stat., § 7448, provides that such deed ''conveys to the grantee the absolute title to the lands described therein free from all incumbrances.'' Chap. 243, Laws of 1927, p. 373 (Rem. Rev. Stat., § 7440), provides that all lands owned by the irrigation district shall be exempt from general state and county taxes.

In the present case, there was no redemption, and the county treasurer accordingly executed a deed to the irrigation district in the month of July, 1931. Thereafter, the appellant district demanded of the county treasurer that the general taxes for the years 1925, 1926 and 1927, which were unpaid, be cancelled. The treasurer refused to do this, and this action followed. The trial court denied the relief prayed for, and dismissed the action.

The question before us is whether such deed given by the county to the district relieves the land of the lien of prior general taxes. We think it does. In the broadest and most sweeping language, the statute,

§ 7448, provides that such deed shall convey to the grantee the *absolute* title free from *all* incumbrances. General taxes are liens upon the property, and must be considered as incumbrances. 20 C. J. 1250, 1251. In *DeVoe v. Rundle,* 33 Wash. 604, 74 Pac. 836, an incumbrancer is defined as one who has a legal claim against an estate. There is nothing in the act, considered as a whole, which in any way, expressly or impliedly, limits or restricts its positive and mandatory language. The statute is so clear and free from ambiguity that it leaves no room for construction.

It is undoubtedly the rule that the state, through its legislature, may abolish or legislate out of existence a tax lien of any kind. *Gasaway v. Seattle,* 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68. Not only did the legislature, by § 7448, specifically provide that the deed passed an absolute title, but with the resulting effect of that statute constantly before it from the time of its enactment in 1890, it passed the law of 1927 exempting lands owned by irrigation districts from general state and county taxes. The legislature did not see fit to provide that the title conveyed by the deed should be subject to general taxes and other liens, as it did in cases of sales for unpaid local improvement assessments, Rem. Rev. Stat., § 9386, but made it absolute.

Counsel for respondent argue that the legislature could not have intended that the statute should have such effect, because that would permit an owner in the district to let his general taxes go unpaid for five years, allow the district to take title on irrigation assessments, and then buy it back with the general taxes wiped out. An owner prompted by such motives would not be safe in pursuing that procedure. He would run the risk of losing his land and then take the chance of being unsuccessful in his endeavor to repur-

chase it. On the other hand, the legislature may have had in mind that to exempt such property from back taxes would aid in its early restoration to the tax rolls, through sale by the district to a private owner.

But whatever may have been the thought of the legislature, we are not concerned with its policy or its impolicy. It is not the province of the court to judge of the wisdom or expediency of a statute when the intention of the legislature is clearly expressed.

"When the meaning of a statute is clear, its consequences, if evil, can only be avoided by a change of the law itself, to be effected by the legislature and not by judicial construction." Lewis' Sutherland, Statutory Construction, § 367.

The effect of the statute was as obvious at the time that it was enacted as it is now upon counsel's criticism. The legislature did not see fit to hedge it about at the time. If it went further than it intended, it has not seen fit to recede. If it made an error, it is an error that should be corrected by it and not by us.

The judgment is reversed, with instruction to the trial court to enter in its place a judgment cancelling the taxes for the years specified in the complaint.

BEALS, C. J., MAIN, MITCHELL, MILLARD, TOLMAN, HOLCOMB, and BLAKE, JJ., concur.