Paul Nogleberg died testate in December, 1930. His estate was appraised at $42,601.76. In November, 1931, a decree of partial distribution was entered without notice to the inheritance tax authorities. It is stipulated that the appraised value of the property so distributed was $4,955.75. In October, 1932, the executor made a report to the inheritance tax and escheat division of the state tax commission showing the inheritance taxes to be $789.62. The supervisor replied: "The tax is as shown in the report, plus any accrued interest."
Shortly thereafter, the executor wrote the supervisor to the effect that, due to the weakness of the real estate market, he was not able to raise funds to pay the tax, saying: "I shall mail you at this time $150.00 on account." *Page 654 
The supervisor acknowledged the receipt of that amount on October 30, 1932, adding:
"Said check has been remitted to the State Treasurer as a partial payment of inheritance tax due the State of Washington in the above entitled estate.
"It is agreeable to this Division that partial payment of said tax be made from time to time but your attention is called to the fact that interest is steadily accruing and that the larger payments you make will result in less interest to be paid."
Nothing further had been paid at the time the legislature enacted chapter 180, Laws of 1935. Section 124 of that act, p. 791, reads as follows:
"The provisions of the title, except section 115, shall apply to all cases pending in the inheritance tax and escheat division and to all cases pending in any of the courts of this state, whether on appeal or otherwise, at the time this act takes effect, whether the death of the decedent occurred prior to the passage of this act or subsequent thereto: Provided, however, That the inheritance tax now due before the passage of this act may be paid under the law effective immediately before the passage of this act if paid within ten months from the time this law becomes effective: Provided, further, That if a portion of the inheritance tax is paid in any estate now pending within the ten months as herein provided, then the increased rates under this title shall apply only upon the proportionate part of such estate remaining unpaid." Rem. Rev. Stat. (Sup.), § 11211e [P.C. § 7030-184].
No payment was made during the ten months' grace period, and, shortly after its expiration, the supervisor, holding the matter to be "pending," within the meaning of the foregoing provision of the statute, made a finding showing a tax due of $3,004.42, and interest in the sum of $851.26, or a total of $3,855.68. In June, 1937, the supervisor filed amended findings fixing the total amount of $3,845.11. To these findings, exceptions were filed by the executor, and, upon a hearing *Page 655 
of the matter, an order was entered, which reads, in part, as follows:
". . . and the Court being fully advised in the facts and premises, does here and now
"ORDER, ADJUDGE AND DECREE that the inheritance tax due in the above-entitled estate is, as originally reported by the executor and accepted and agreed upon by the Supervisor, the sum of $789.62. That the executor has made a payment on account of said tax in the sum of $150.00, and that the inheritance tax now due herein is the sum of $639.62, plus interest on $789.62 from the 21st day of December, 1930, to the 19th day of October, 1932, at the rate of eight per cent per annum, and interest on $639.62 from the 19th day of October, 1932, at the rate of eight per cent per annum until payment."
[1] The first question presented by the appeal is: Is this a "pending" case, within the meaning of § 124, chapter 180, Laws of 1935? In support of the trial court's holding that it was not a pending case, the respondent cites In re Turner's Estate,191 Wn. 145, 70 P.2d 1059, as conclusive. But it is clear that, in that case, the amount of the tax was fixed by a formal judicial decree entered with notice. A receipt was issued showing payment of the inheritance taxes. The estate was distributed, and the executrix discharged from her trust. The tax liability, as such, was wholly discharged by the acceptance of a bond liability in lieu thereof, in the manner permitted by the then existing statute. In the instant case, at the time the hearing was held, the bulk of the estate was still in the hands of an actively functioning executor. There had been no payment of tax, except a small sum on account. The amount of the tax had not been fixed by judicial decree.
It is contended, however, that the amount of the tax was fixed by an agreement between the executor and the supervisor in October, 1932. This amounts to a contention that the supervisor had the power to adjudicate *Page 656 
the amount of taxes due and irrevocably fix the amount as between the state and the estate by entering into a contract with the executor. We do not think the supervisor had, or has, such power. He has limited powers to compromise in doubtful cases, but even then, the compromise settlement must be approved by the superior court having jurisdiction of the estate. Rem. Rev. Stat., § 11215 [P.C. § 7066].
Furthermore, it does not appear to us that the supervisor and the executor purported to make such a contract. No more is shown other than that their minds met upon the amount of taxes payable, if paid under the then existing law. The respondent executor could have paid under that law had he chosen to do so. He not only delayed for several years until chapter 180, Laws of 1935, was enacted, but after its enactment he failed to take advantage of the proviso of § 124:
"Provided, however, That the inheritance tax now due before the passage of this act may be paid under the law effective immediately before the passage of this act if paid within ten months from the time this law becomes effective."
Meanwhile, the interest on whatever tax was due was, of course, accumulating day by day throughout the entire period. It seems clear to us that this matter was in no sense closed in October, 1932, or at any other time, but that it has, at all times since the death of Nogleberg, been pending, within the meaning of the 1935 statute, and that the rates therein provided must be applied. In re Elvigen's Estate, 191 Wn. 614,71 P.2d 672; In re Smith's Estate, 194 Wn. 215, 77 P.2d 780.
[2] The second question presented is: Did the trial court correctly hold that the one hundred and fifty dollars paid in October, 1932, should be applied on the tax instead of being first credited to interest and then *Page 657 
to principal? Ordinarily, interest is not regarded as part of a tax. Henry v. McKay, 164 Wn. 526, 3 P.2d 145, 77 A.L.R. 1025. Since the executor wrote that he was unable to pay the tax in full, but enclosed one hundred and fifty dollars "on account," and the supervisor replied: "Said check has been remitted to the State Treasurer as a partial payment of inheritance tax due the State of Washington," we think it sufficiently appears that the parties agreed on its application to the payment of the tax, as distinguished from interest. The respondent executor is entitled to have it so applied.
[3] The third question presented is with regard to the computation of interest. The appellant contends that interest must be paid from the date of death on the amount of tax found due by application of the new rates provided in the 1935 statute. The respondent executor says that, since it is clear that he owed but $789.62, up to the time the 1935 statute became effective, this would be charging interest upon a liability which had no existence. But the liability did have existence. The retroactive provisions of the statute established the greater liability asof the date of death. We see no escape from the application of that part of Rem. Rev. Stat., § 11210 [P.C. § 7061], which reads as follows:
"All taxes imposed by this act shall take effect and accrueupon the death of the decedent or donor. If such tax is not paid within fifteen months from the accruing thereof, interest shall be charged and collected at the rate of eight per centum per annum. . . ." (Italics ours.)
[4] Finally, it is contended that the increased rates of the 1935 statute cannot possibly be applied to that portion of the property which was distributed by a partial decree of distribution in 1931, citing Succession of *Page 658 Stauffer, 119 La. 66, 43 So. 928, which holds that the property of an estate vests in the distributees upon distribution, and that the imposition of new or increased inheritance taxes thereafter would constitute an unlawful infringement of vested rights. But whatever the law may be in Louisiana, we have consistently held that the property does not vest in the distributees until the inheritance tax is paid.
In In re Fotheringham's Estate, 183 Wn. 579,49 P.2d 480, and again in In re Smith's Estate, 194 Wn. 215,77 P.2d 780, we quoted, with approval, the following excerpt fromUnited States v. Perkins, 163 U.S. 625, 41 L.Ed. 287,16 S.Ct. 1073:
"`Certainly, if it be true that the right of testamentary disposition is purely statutory, the State has a right to require a contribution to the public treasury before the bequest shall take effect. Thus the tax is not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the Statethat it becomes the property of the legatee.'" (Italics ours.)
Applying that principle in In re Smith's Estate, supra, it was held that the increased rates imposed by chapter 180, Laws of 1935, were applicable and collectible, even though the entire
estate had been distributed by a lawful decree before chapter 180 was enacted.
The order appealed from is set aside, and the lower court is directed to enter a new order in harmony with this opinion.
BLAKE, C.J., STEINERT, MAIN, and JEFFERS, JJ., concur. *Page 659