[No. 49093–7.   En Banc.   October 20, 1983.]

*In the Matter of the Estate of*
ROBERT B. HITCHMAN.

*Kenneth O. Eikenberry, Attorney General,* and *William B. Collins* and *James R. Watt, Assistants,* for appellant.

*Bogle & Gates* and *Ronald T. Schaps,* for respondent.

*Alan L. Wicks* and *Michael F. Rodin,* amici curiae.

UTTER, J.—This case raises the question of whether the recent revision of our inheritance tax laws applies to every estate for which taxes did not become due until after the new law's effective date or to only those estates of decedents who died after that date. We hold that inheritance tax accrues as of the date of death and that the express saving clause in the new law preserved all such obligations existing at the time the law became effective.

Decedent died on April 17, 1981, which under then existing law caused inheritance tax to accrue immediately. *See* former RCW 83.44.010. Payment of the tax, however, could be, and was in this case, delayed for 9 months, *i.e.*, until January 17, 1982, without penalty. *See* former RCW 83.44-.010.

In November 1981, the voters passed Initiative 402, now codified as RCW 83.100, to become effective on January 1, 1982. The Initiative substituted an estate tax for the inheritance tax and significantly reduced tax rates. In the present case, for example, the tax due under the old law would have been $14,459.22, while the tax due under the new law would be only $4,596.31. Applying the new law to the estates of all decedents dying in the last 9 months of 1981 would reduce state revenues by $36 million.

That the new law should apply to all estates which had not yet paid taxes as of January 1, 1982, is precisely the argument made by the estate in the present case. The estate refused to pay the amount due under the former law and paid only the amount due under the new law. The Department of Revenue then refused to issue a release. After appropriate statutory procedures (*see* RCW 83.28) and a hearing, the trial court held in favor of the estate. The State now appeals, arguing (1) that the express saving clause in the initiative preserved the State's right to inheritance taxes already accrued; and (2) that the State's rights had vested as of the date of death and any release of such rights constituted a gift of public funds in violation of Const. art. 8, § 5.

In repealing the former inheritance tax laws and substi-

tuting the current estate tax, Initiative 402 also provided:

> These repeals shall not be construed as affecting any existing right acquired under the statutes repealed or under any rule, regulation, or order adopted pursuant thereto; nor as affecting any proceeding instituted thereunder.

Initiative 402, § 83.100.160(2), codified as RCW 83.100-.900(2). Under the former statute, as noted above, inheritance taxes accrued as of the date of death, though payment could be delayed. *See* former RCW 83.44.010; *cf. In re Estate of Fotheringham,* 183 Wash. 579, 585–86, 49 P.2d 480 (1935) (treating application of new inheritance tax to pending estate as retroactive). The key issue is whether the State's accrued right to collect inheritance taxes from the estate was an "existing right" protected by this provision.

■ Initially, the estate argues that any doubt in the meaning of a taxing statute must be resolved in favor of the taxpayer. *See Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 134, 587 P.2d 535 (1978). This rule has been generally overemphasized and exaggerated in scope, however.

> "The better rule . . . is that statutes imposing taxes and providing means for the collection of the same should be construed strictly in so far as they may operate to deprive the citizen of his property by summary proceedings or to impose penalties or forfeitures upon him; but otherwise tax laws ought to be given a reasonable construction, without bias or prejudice against either the taxpayer or the state, in order to carry out the intention of the legislature and further the important public interests which such statutes subserve."

3 C. Sands, *Statutory Construction* § 66.02 (4th ed. 1974) (quoting *State ex rel. Hennepin Cy. v. Brandt,* 225 Minn. 345, 351, 31 N.W.2d 5 (1948)) and cases cited therein. *See, e.g., Parr v. Department of Rev.,* 276 Or. 113, 116–17, 553 P.2d 1051 (1976). *Accord, Spaulding v. Adams Cy.,* 79 Wash. 193, 197–98, 140 P. 367 (1914); *see also In re Estate of Sweek,* 191 Wash. 660, 664, 71 P.2d 657, 113 A.L.R. 386 (1937).

We are not inclined to bias our analysis as strongly against the State as suggested by the estate's assertion that "*any* reasonable interpretations favorable to the widow/personal representative must be adopted *regardless* of any other possible interpretations." (Italics ours.) Brief of Respondent, at 11. In any event, the principle of construction advocated by the estate, to the extent that it is appropriate at all, is applicable only when the provision in question, read in the context of the entire statute, is ambiguous. *Dravo Corp. v. Tacoma,* 80 Wn.2d 590, 595–96, 496 P.2d 504 (1972). We find no significant ambiguity here.

■■ In interpreting Initiative 402, we must look to the voters' intent and the language of the Initiative as the average informed lay voter would read it. *See Department of Rev. v. Hoppe,* 82 Wn.2d 549, 555, 512 P.2d 1094 (1973). Contrary to the estate's suggestion, we do not find the official ballot title clearly indicative of an intent to abolish all inheritance taxes not yet collected as of the Initiative's date. The title and other analysis in the voters pamphlet express to us only an intent to, as of January 1, 1982, substitute a restricted state death tax for inheritance and gift taxes *and* preserve "any existing right under the statutes repealed". Official Voters Pamphlet 17 (1981); RCW 83.100.900. The Initiative does not directly address the largely technical question of whether application of the Initiative's provisions should turn on the date of death or the date of payment. The estate's contention that absolute immediacy was a concern is undercut somewhat, however, by the fact that the law was made effective not immediately but 2 months after the election.

The controlling question is how the average informed voter would interpret the words "existing right". *See Hoppe,* at 555. The estate argues that "right" differs from "obligation" and that while "rights" are preserved, tax "obligations" are not.

We are unable to attribute to the voters the technical legal distinction between "right" and "obligation" suggested by the estate. Indeed, the only legal authority mustered in

support of such a distinction is the fact that two acts passed by the Legislature, in 1961 and 1967, choose to mention both concepts in saving clauses. *See* Laws of 1967, 1st Ex. Sess., ch. 149, § 63 (enacting RCW 82.98.035); Laws of 1961, ch. 15, §§ 82.98.040, 83.98.040, 84.98.040 (enacting RCW 82.98.040, RCW 83.98.040, and RCW 84.98.040). *But see Spokane Cy. v. Northern Pac. R.R.,* 5 Wash. 89, 90–91, 31 P. 420 (1892) (involving saving clause in former revenue law which spoke only of "existing right[s]" and "proceeding[s] pending"; case decided on other grounds). The estate cites no case making the distinction it suggests and cases in other jurisdictions have expressly included the State's right to collect taxes within the term "existing right". *See, e.g., In re Hubbs,* 31 Ariz. 252, 263, 265, 252 P. 515 (1926); *State ex rel. Caster v. Atchison, T. & S.F. Ry.,* 99 Kan. 831, 832, 834, 163 P. 157 (1917) (saving statute protecting both "any right accrued" and "any duty imposed"; analyzing State's right to collect inheritance tax as a "right accrued").

Whatever the interpretation of legislators and courts versed in the law, the average informed voter must have construed the word "right" as including the State's right to collect taxes. This was the only significant right provided by the former inheritance and gift tax laws. *See generally* RCW Title 83. If the voters did not intend to preserve it, what right did they intend to preserve? Exemption rights become superfluous if tax rights are not preserved. While the former statute did also provide certain taxpayer protections such as the refund of overpayments of tax (*see, e.g.,* former RCW 83.44.080), those obligations are secondary to the broader right to tax and were doubtless not the major consideration in the average informed voter's mind.

In addition, the estate's technical distinction between "right" and "obligation", which as we note above has not been consistently made even by legislatures and courts, is a distinction which we seriously doubt the average informed lay voter would make. In common usage, the existence of an obligation toward another implies the existence of a right in the obligee and hence preservation of rights necessarily

implies preservation of obligations. *See Webster's Third New International Dictionary* 1556 (1971) (defining "obligation" as "a legal relationship or tie in accordance with which one party is able to compel another . . . to do or not to do a specified act"); *Webster's,* at 1955 (defining "right" as "a power or privilege vested in a person by the law to demand action or forbearance at the hands of another"). The taxpayer's "obligation" to pay tax is the State's "right" to collect it. No doubt the estate would have no trouble construing the provision for refunds of excess tax payments under the former statute (*see, e.g.,* former RCW 83.44.080) as a "right" of the taxpayer, though it is equally an "obligation" of the State.

We cannot reach any conclusion other than that the average informed voter would have interpreted "right" as including the State's right to tax. It is the intent and interpretation of the average informed voter which should control our decision, not the technical and debatable legal distinction advanced by the estate.

Because of this conclusion we need not consider the State's constitutional argument. The decision of the trial court is reversed.

WILLIAMS, C.J., and DOLLIVER, DORE, and DIMMICK, JJ., concur.

BRACHTENBACH, J.—I dissent. The broad issue is whether a beneficiary is liable for inheritance tax in effect at the time of the decedent's death but which was repealed before the tax was due.

RCW 83.04.010 imposed an inheritance tax to be determined as provided in other parts of RCW Title 83. Initiative 402, codified as RCW 83.100, was passed by the voters in November 1981. It repealed all of RCW Title 83, effective January 1, 1982. RCW 83.100.900.

This controversy arose because the decedent died April 17, 1981, while the inheritance tax was in effect, but the tax was not due until January 17, 1982, RCW 83.44.010, after

the effective date of the repeal.

The Initiative, in lieu of an inheritance tax, imposed a tax in an amount equal to the maximum federal credit allowed by 26 U.S.C. § 2011(b) (1979). The inheritance tax would be $14,459.22; under the Initiative the tax would be $4,596.31. Hence this lawsuit. The estate paid the lesser amount; the Department of Revenue refused to issue its release. After appropriate statutory procedures, RCW 83.28, and a hearing, the trial court held in favor of the estate. I would affirm.

The State advances three arguments: (1) The State acquired a vested right to the inheritance tax at the date of death. If Initiative 402 extinguished that "vested" right, it constituted a gift by forgiveness of public funds in violation of Const. art. 8, § 5. (2) The saving clause in the Initiative preserved the State's right to the inheritance tax. (3) The State's position is the only one consistent with the intent of the Initiative.

On the first issue, we must determine whether the State had a vested right to the tax as of the date of death. It relies upon RCW 83.44.010: "[a]ll taxes imposed by the inheritance tax provisions of this title shall take effect and accrue upon the death of the decedent . . ." Further, the State points to RCW 83.04.023 which creates a lien "from the date of death".

Thus, the question is whether the tax which took effect and accrued, in the words of the statute, could be modified or eliminated prior to the time that the accrued tax was due. The State leaps from the "take effect and accrue" language of the statute to the conclusion that its right to the tax was *vested*. It argues that such a vested right cannot be extinguished by the repeal of the inheritance tax statute.

To support the State's position it relies principally upon three cases. First, *In re Estate of Colman,* 187 Wash. 312, 60 P.2d 113 (1936). That case involved an attempt to amend a trust after the decedent's death so as to qualify for an inheritance tax exemption. Second, *In re Estate of Ivy,* 4 Wn.2d 1, 101 P.2d 1074 (1940) likewise involved an after–

death attempt to amend a trust and change the tax consequences. Third, *In re Estate of Dunn,* 31 Wn.2d 512, 197 P.2d 606 (1948) discusses *In re Estate of Ivy, supra,* but is not in point since it concerns the determination of what assets were taxable in succeeding estates.

It is true that those cases speak of the vested right of the State to the inheritance tax. However, there was no analysis of or necessity of determining the precise date of vesting.

There is another line of cases which, by analogy, I would find controlling. In *In re Estate of Fotheringham,* 183 Wash. 579, 49 P.2d 480 (1935), the death was in 1932. A valuation of assets dispute arose. While the case was pending in this court the Legislature amended the inheritance tax statute by changing the basis for valuation and the tax rates; the act specifically provided for application to all cases pending in the inheritance division and in the courts. This court held that the statute was constitutional and applied to the estate even though death had occurred 3 years earlier.

*In re Estate of Button,* 190 Wash. 333, 67 P.2d 876 (1937) involved an issue whether an increased gift tax rate under the 1935 amendment applied to an estate where the death was in 1933. In fact, the tax was imposed on a 1932 gift in contemplation of death. The court held the 1935 statute applied.

*In re Estate of Elvigen,* 191 Wash. 614, 71 P.2d 672 (1937) concerned a 1930 death. The tax was partially paid in 1931 based on existing law. An exemption was claimed but did not qualify under a 1931 amendment. In 1935, while the matter was pending, the rates were increased. The court held the exemption had been validly eliminated retroactively and the 1935 rates applied to the unpaid tax arising from the 1930 death. *See also In re Estate of Smith,* 194 Wash. 215, 77 P.2d 780 (1938) and *In re Estate of Nogleberg,* 200 Wash. 652, 94 P.2d 488 (1939). The State argues that those cases do not concern vesting, but rather the constitutionality of retroactive changes. That may be correct but those cases undercut the State's position.

Absent persuasive authority, which is not cited, I find it would indeed be too incongruous to allow the Legislature to increase tax rates, change exemptions and alter methods of valuation while denying the right to modify or eliminate the tax.

We have held: "[a]ssuming that the obligation did exist on that date, the legislature nevertheless had the power to extinguish it." *Snow's Mobile Homes, Inc. v. Morgan,* 80 Wn.2d 283, 287, 494 P.2d 216 (1972). Also, "[i]t is undoubtedly the rule that the state, through its legislature, may abolish or legislate out of existence a tax lien of any kind." *North Spokane Irrig. Dist. 8 v. Spokane Cy.,* 173 Wash. 281, 283, 22 P.2d 990 (1933). In this case, we should hold the State did not have a vested right to collect inheritance taxes that had accrued at the date of decedent's death but were not yet due.

The State's right to an inheritance tax did not vest at the date of death so we should not consider the argument that the repeal violated Const. art. 8, § 5. We do note the lack of success of a similar argument in *Fulton Found. v. Department of Taxation,* 13 Wis. 2d 1, 108 N.W.2d 312, *reh'g denied,* 109 N.W.2d 285 (1961). There a gift tax had accrued and was past due when the statute was so amended that the gifts would be exempt. The court upheld the exemption stating:

> A tax is not necessarily unconstitutional because it is retroactive. . . . This being true, it ought to follow that a general law retroactively granting exemptions from taxes recently accrued or paid is not an expenditure of public funds for a private purpose. . . .
>
> . . .
> There undoubtedly is a time limitation beyond which the legislature cannot proceed retroactively to exempt from tax so as to compel a refund of taxes already paid. However, it seems clear that such time limitation was not exceeded with respect to the application of the retroactive exemption to the unpaid gift taxes due on the 1948 transfers to the Foundation in the instant case.

In view of the foregoing, we determine that the application of the retroactive exemption . . . does not constitute an expenditure of public funds for a private purpose.

*Fulton Found.,* at 14–14a.

The next question is the effect of the repealer and savings section of the Initiative, codified as RCW 83.100-.900(1), which repeals entirely the inheritance tax statutes. The Initiative also provided:

> These repeals shall not be construed as affecting any existing right acquired under the statutes repealed or under any rule, regulation, or order adopted pursuant thereto; nor as affecting any proceeding instituted thereunder.

Codified as RCW 83.100.900(2).

The State's position is that it had an existing right under the repealed statutes and that there was a proceeding thereunder, *i.e.,* the probate. The State's argument begs the question. Certainly it had an expectancy of collecting the tax when it was due, but before that due date the statute imposing the tax was repealed.

The words "existing right" and "any proceeding instituted thereunder" are not defined in the Initiative. Therefore we must ascertain the legislative intent of the voters and, as one aid, may look to the Official Voters Pamphlet as well as the enactment itself. *Department of Rev. v. Hoppe,* 82 Wn.2d 549, 512 P.2d 1094 (1973).

Several rules of statutory construction must be kept in mind. First,

> It is a well established rule of construction that when a statute repeals another with a saving clause or proviso attached by which the right of some person or of the State is reserved, such proviso or saving clause must be strictly construed, and will not be held to embrace anything which is not fairly within its terms.

*State v. Brady,* 102 Tex. 408, 415, 118 S.W. 128 (1909). In *United Business Comm'n v. San Diego,* 91 Cal. App. 3d 156, 171, 154 Cal. Rptr. 263 (1979) (quoting 25 R.C.L. 940, § 193), the court noted:

*And nothing less than* a plain exception of existing cases or claims from the operation of the repealing act or *a continuance of the same system of taxation under new regulations will save such cases or claims from the effect of the repeal.'"*

Second, "the only rights within the protection of the saving statute [a general saving clause] . . . are 'vested rights,' . . ." *Pratt v. Hayes,* 20 Ill. App. 2d 457, 465, 156 N.E.2d 290 (1959).

Finally, this court relied upon similar principles to hold that an express repeal of legislation destroys all rights and obligations not expressly saved. *Lau v. Nelson,* 89 Wn.2d 772, 774, 575 P.2d 719 (1978).

Perhaps most telling in ascertaining the intent of these undefined phrases in the saving clause is the official ballot title: "Shall inheritance and gift taxes be *abolished,* and state death taxes be *restricted* to the federal estate tax credit allowed?" (Italics mine.) Official Voters Pamphlet 6 (1981). That title coupled with a specific effective date of January 1, 1982, clearly indicates an intent to abolish all inheritance taxes not yet collected as of that date. Despite the unclear language of the saving clause, we should not attribute to the voters the complex legal theories argued for by the State about vested rights, constitutional restrictions and statutory accruals. *Department of Rev. v. Hoppe, supra* at 555. "[I]f there is [any] doubt as to the meaning of a taxing statute, it is to be construed in favor of the taxpayer and against the taxing body." *Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 134, 587 P.2d 535 (1978).

If the drafters of the Initiative intended the repealed statutes to apply to estates arising from deaths occurring prior to the effective date, it would have been extremely simple to have said so. When drafters of legislation have intended to preserve accrued but unpaid obligations or liabilities, they have said so, *e.g.,* RCW 82.98.035: "[n]othing in this 1967 amendatory act shall be construed to affect any

existing rights acquired or *any existing liabilities incurred* under the sections amended or repealed . . ." (Italics mine.) RCW 82.98.040: "[s]uch repeals shall not be construed as affecting any existing right acquired, or *obligation or liability* incurred, under the provisions of the statutes repealed . . ." (Italics mine.) RCW 84.98.040: "[s]uch repeals shall not be construed as invalidating, abating, or otherwise affecting any existing right acquired or any *liability or obligation* incurred under the provisions of the statutes repealed . . ." (Italics mine.)

I conclude that the saving clause did not preserve any unvested, undetermined tax obligation which was not yet even due and which would have been subject to events, such as claims, expenses, adjustments with the federal tax and perhaps litigation, all of which could have occurred after death, indeed after the effective date of the Initiative.

Finally, the State argues that only its interpretation is consistent with the intent of the voters and the substantive provisions of the Initiative. It looks to RCW 83.100.030(1) which defines the taxable event as the "transfer" of the net estate. "Transfer" is defined in RCW 83.100.020(13) as it is defined and used in section 2001 of the United States Internal Revenue Code of 1954, as amended or renumbered. In fact, "transfer" is not defined in 26 U.S.C. § 2001 (1979). The State then cites two federal Court of Appeals cases which establish that the "transfer" occurs at the date of death. *Chickering v. Commissioner,* 118 F.2d 254 (1st Cir. 1941); *Walter v. United States,* 341 F.2d 182 (6th Cir. 1965).

I doubt if many voters read 26 U.S.C. § 2001 (1979), much less the cases interpreting it. In any event, it is equally logical to say that the "transfer" which took place at this decedent's death was intended to be covered by the Initiative since that event had not yet even triggered a tax that was due before the effective date.

476

The trial court should be affirmed.

ROSELLINI, STAFFORD, and PEARSON, JJ., concur with BRACHTENBACH, J.

Reconsideration denied January 25, 1984.